UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA LYNETTE PAGE,

    Plaintiff,                        Civil Action No. 07-11022

v.                                    HON. AVERN COHN
                                      U.S. District Judge
                                      HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth in Section **B**. of the analysis, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED in part and denied in part, DENYING her request for an award of benefits, but GRANTING her request for a remand to the administrative level for further fact-finding.

## **PROCEDURAL HISTORY**

On January 12, 2004, Plaintiff filed an application for DIB, alleging an onset date of

-1-

March 26, 2003[1] (Tr. 58-60). After the initial denial of benefits, Plaintiff requested an administrative hearing, held on May 18, 2005 in Oak Park, Michigan (Tr. 283). Administrative Law Judge ("ALJ") Michael B. Kennett presided (Tr. 283). Plaintiff, represented by attorney Barry O'Lynnger, testified (Tr. 286-301) as did Michael Rosko, a vocational expert ("VE") (Tr. 301-307). On February 22, 2006, ALJ Kennett found that although Plaintiff was unable to perform her past relevant work as a salesperson, she retained the ability to perform a significant range of exertionally light work (Tr. 26-27). On January 9, 2007, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on March 8, 2007.

## BACKGROUND FACTS

Plaintiff, born October 7, 1968, was age 37 when the ALJ issued his decision (Tr. 19, 58). Plaintiff graduated from high school and worked previously as a salesperson (Tr. 93). She alleges disability as a result of severe allergic rhinitis, sinus headaches, carpal tunnel syndrome ("CTS"), left shoulder derangement, cervical spondylosis and lumbar radiculitis (Tr. 93).

### A. Plaintiff's Testimony

Plaintiff testified that she lived in Pontiac, Michigan with her son, sister, and niece (Tr. 286). She reported that she last worked on September 15, 2000, indicating that she had

---

[1] A previous claim by Plaintiff, filed on August 14, 2001, was dismissed on March 25, 2003 due to her failure to appear at a hearing scheduled for February 3, 2003 (Tr. 30-31).

been discharged from her job at Wal-Mart after requesting a medical leave (Tr. 288). Plaintiff, 5' 3", estimated that she weighed 169 pounds (Tr. 289). She testified that she currently took birth control pills for a fibroid condition as well as Flonase for allergies (Tr. 289-290). Plaintiff opined that itchy eyes, facial pain, headaches, sinus trouble, and CTS precluded her from all work (Tr. 291).

Plaintiff testified that bilateral CTS required her to wear wrist braces on a daily basis, indicating that she received some measure of relief from heat treatment (Tr. 291). She stated further that she experienced problems bending and left leg pain due to a lower back condition (Tr. 292). Plaintiff denied smoking, drinking, or using illicit drugs (Tr. 293). She testified that she had a driver's license but did not drive due to shoulder problems (Tr. 293). Plaintiff indicated that she relied on various family members to cook, clean, and perform laundry chores, denying that she performed either indoor or outdoor chores (Tr. 293). She alleged that she left the house only for doctors' appointments (Tr. 294).

Plaintiff stated that she could stand or walk for no more than five to ten minutes due to leg pain as well as bladder pressure as a result of uterine fibroids (Tr. 294-295). She testified that back problems prevented her from sitting in one position for more than five minutes (Tr. 295-296). Plaintiff indicated that she was unable to lift more than five pounds due to CTS (Tr. 296).

In response to questioning by her attorney, Plaintiff testified that she did not experience allergy symptoms as long as her house stayed clean (Tr. 298-299). She indicated that she received allergy shots on a weekly basis, adding that the shots created the side

effects of mood swings (Tr. 298). She alleged that neck or back muscle spasms triggered sinus headaches and eye irritation (Tr. 299). She also stated that the headaches could be triggered by cold or rainy weather (Tr. 299). Plaintiff stated that she had undergone surgery for the removal of nasal polyps (Tr. 300). She alleged the loss of left eye vision because of the polyps (Tr. 300).

### B. Medical Evidence

#### 1. Treating Sources

June 2002 imaging studies of Plaintiff's cervical spine showed the presence of mild spondylosis at C5-C6 (Tr. 103). In January 2003, Plaintiff sought emergency treatment for neck and back pain (Tr. 108). Treating notes state that Plaintiff exhibited normal motor skills and muscle tone (Tr. 109). In March 2003, Todd Best, M.D., noting that Plaintiff reported neck and thoracic pain of "10" on a scale of one to ten, ordered imaging studies (Tr. 137-140). MRI's of Plaintiff's left shoulder, lumbar spine, and cervical spine showed negative results, but an EMG showed the presence of CTS (Tr. 129, 131-133). Dr. Best prescribed exercise and wrist splints (Tr. 130). A June 2003 imaging study of Plaintiff's neck showed enlarged submandibular glands (Tr. 125). In September 2003, Plaintiff reported continued neck and back pain, as well as facial pain due to sinus problems (Tr. 119). In November 2004, Plaintiff reported that taking Klonopin relieved sinus symptoms (Tr. 115).

A December 2003 intake assessment by Oakland Family Services, noting that Plaintiff had been involved in a police altercation in September 2001, found that she experienced

depression and stress (Tr. 165-171). Plaintiff received a GAF of 40[2] (Tr. 170). The same month, Plaintiff sought emergency treatment for back and hip pain (Tr. 205). Plaintiff declined an offer of prescriptions for Motrin and muscle relaxers (Tr. 106). In April 2004, Jaswant Bagga, M.D., performed a psychiatric evaluation of Plaintiff, characterizing her as "histrionic and hypomanic," finding the presence an obsessive compulsive disorder, situational depression, and borderline traits (Tr. 164). He assigned Plaintiff a GAF of 42[3] (Tr. 164).

In November 2003 and February and April 2004, M.N. Savliwala, M.D., submitted opinion letters on behalf of Plaintiff, stating that Plaintiff should avoid "increased dust exposure, chemical exposure or any irritant exposure" due to allergies (Tr. 144, 145, 204). In June 2004, Dr. Best opined that Plaintiff's left shoulder pain and bilateral CTS rendered her disabled (Tr. 112). In October 2004, Dr. Savliwala, noting that he had treated Plaintiff since 2002, concluded that her allergies also precluded all competitive work (Tr. 203). The following month, Dr. Savliwala completed a medical questionnaire, finding that in addition to Plaintiff's allergy condition, she experienced physical limitations precluding her from

---

[2] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*) (4th ed.2000)

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR*) (4th ed.2000).

lifting more than five pounds (Tr. 198). The same month, D. Watson, M.D., noting that Plaintiff had undergone surgery for sinus polyps, observed that imaging studies of Plaintiff's back and shoulder showed unremarkable results (Tr. 205). Dr. Watson noted further that nerve conduction studies showed the presence of "mild" bilateral CTS (Tr. 205). He opined that her "sources of pain seem[] far more likely musculoskeletal than from the nervous system," noting the lack of objective evidence supporting her complaints (Tr. 206).

In September 2004, imaging studies showed the presence of uterine fibroids (Tr. 208). In January 2005, Dr. Savliwala reiterated his earlier opinion that Plaintiff was precluded from all work as a result of allergies (Tr. 215).

### 2. Consultive and Non-Examining Sources

A March 2004 Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff retained the ability to lift 20 pounds occasionally, 10 pounds frequently, and sit, stand, or walk for six hours in an eight-hour workday (Tr. 152). The assessment also found the presence of pushing and pulling limitations of the upper extremities, also limiting Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling as well as frequent (as opposed to *constant*) reaching and handling (Tr. 153-154). The report found the absence of visual and communicative impairments, but found that Plaintiff should avoid "even moderate exposure" to "[f]umes, odors, dust, gases, [or] poor ventilation" (Tr. 155). The assessment concluded that objective medical evidence "partially" supported Plaintiff's claim of disability (Tr. 156).

In April 2004, a Psychiatric Review Technique Form ("PRTF") completed by H.

Tien, M.D., on behalf of the SSA, found the presence of affective and anxiety-related disorders, concluding that Plaintiff experienced *mild* restriction in daily living and social functioning, but *moderate* "[d]ifficulties maintaining concentration, persistence, or pace" (Tr. 176, 178, 183). A Mental Residual Functional Capacity Assessment performed at the same time found that Plaintiff's ability to "carry out detailed instructions," and "perform activities within a schedule" was also moderately limited (Tr. 187). Likewise, the assessment found that Plaintiff's ability to "be aware of normal hazards," "use public transportation," or "set realistic goals" was moderately limited (Tr. 187-188). Dr. Tien concluded that Plaintiff was capable of a "wide range" of unskilled work despite her mental limitations (Tr. 189).

In October 2005, Asit K. Ray, M.D., performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 220). Dr. Ray noted that Plaintiff exhibited good posture, but complained of back and neck pain as well as CTS (Tr. 220-223). Dr. Ray noted the absence of muscle atrophy or evidence showing the presence of CTS (Tr. 221). The same month, Rokeya Muhaimeen, M.D., also performed a consultive psychiatric examination of Plaintiff, noting that she displayed "good contact with reality," but low self esteem (Tr. 233). Dr. Muhaimeen described Plaintiff as "tense" and "hyperverbal," with "well organized thinking" (Tr. 233). Noting Plaintiff's diagnosis of depression, he assigned Plaintiff a GAF of 60-65[4]

---

[4]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000). GAF scores in the range of 61-70 indicate "some mild

(Tr. 234-235).

**3. Medical Records Submitted Subsequent to the February 22, 2006 Administrative Decision**

Treating notes indicate that in August 2005, Dr. Savliwala administered a cortisone shot (Tr. 269). In October 2005, Todd T. Best, M.D., noting that Plaintiff continued to complain of shoulder pain, administered a cortisone injection, recommending home exercise as well as hot and cold therapy (Tr. 272-273). January 2006 treating notes indicate that Plaintiff continued to receive conservative care (Tr. 274).

**C. Vocational Expert**

VE Michael Rosko classified Plaintiff's past relevant work as a Wal-Mart salesperson as semi-skilled at the heavy exertional level[5] (Tr. 302). The ALJ then posed the following question:

> "A hypothetical person the claimant's age, education, and past relevant work, with, for argument purposes, a light residual functional capacity but no more than normal exposure to dust, chemicals, and other airborne pollutants . . . and no job requiring binocular vision. In other words, she'd have problems with depth perception. And a job only requiring minimal use of her bilateral upper extremities, or hands in essence, for fine manipulation. Could she do her past relevant work?"

(Tr. 302-303). The VE replied that the individual described above would be unable to

---

symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-- Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000)

[5]20 C.F.R. § 404.1567(d) states that "[h]eavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

perform Plaintiff's past relevant work, but could perform a range of unskilled work including packaging and visual inspection, adding that the jobs would not require "fine dexterity," but called for the "regular use of the hands in gross manipulation" (Tr. 303). The VE then found the existence of exertionally light jobs that did not require the "frequent use of the hands," including the unskilled work of gate attendant and security monitor[6] (Tr. 304). The VE testified that the gate attendant position, representing approximately one third of the above-cited jobs, "would, on occasion, expose one to exhaust fumes" (Tr. 305). In response to questioning by Plaintiff's attorney, the VE found that if the same individual were incapacitated by headaches two to three times each month, her "ability to maintain employment" would be "very tenuous" (Tr. 306). The VE estimated that 1,400 gate attendant positions existed regionally and 65,000 nationally, with 2,800 security monitor positions regionally and 140,000 nationally (Tr. 306-307).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of a muscle/ligament disorder and allergic rhinitis, but found nonetheless

---

[6] 20 C.F.R. § 404.1567(b) states that exertionally *light* work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

that impairs did not "meet or medically" equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 22, 26). Citing State Agency medical consultants, he concluded that her limitations as a result of mental conditions were non-severe (Tr. 22). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) "to perform at least light exertional work activity with no more than normal exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 24). The ALJ adopted the VE's job findings, concluding that Plaintiff could perform the jobs of security gate attendant and security monitor (Tr. 24).

The ALJ supported his non-disability determination by stating that he found Plaintiff's allegations of limitation "not totally credible," noting that objective medical tests did not show evidence of radiculopathy, CTS, or "severe allergies" (Tr. 22, 26). He also found that Dr. Best's opinion that Plaintiff was totally disabled stood at odds "with his findings as stated in his reports and findings of other examining physicians" (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues first that the ALJ impermissibly discounted her treating physicians' determination that she was disabled and instead, placed undue weight on consultive and non-treating sources. *Plaintiff's Brief* at 5. She also argues that ALJ's finding that her mental impairments were non-severe stands unsupported by record evidence. *Id.* at 6. On a related note, Plaintiff argues in effect that the ALJ's failure to include her mental impairments invalidates the ALJ's ultimate conclusion that she could perform the work of a security gate attendant and security monitor.[7] *Id.*

### A. Treating Physician Analysis

"[T]reating physicians' opinions, based on objective evidence, should be accorded

---

[7]The transcript contains material submitted after the administrative decision was issued (Tr. 269-275). Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

The fact that Plaintiff has not requested a Sentence Six remand does not prevent the Court from granting such relief *sua sponte*. *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005). However, a review of the newer records shows that Plaintiff's condition was essentially static in the months leading up to the administrative decision, indicating that a sentence six remand is not warranted.

significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991). SSR 96-2 instructs that in the event a treating physician's finding conflicts with other evidence, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) states as follows:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

Moreover, regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, *Wilson* at 544, *citing* 20 C.F.R. § 404.1527(d)(2), requires that the ALJ nonetheless give "good reasons" for rejecting the treating physician's opinion.

In the present case, the ALJ's procedurally adequate "treating physician" analysis does not present grounds for remand. The ALJ permissibly rejected Dr. Savliwala's disability opinion by noting that it stood at odds with other portions of Plaintiff's medical records. For instance, although Dr. Savliwala found in November 2004 that Plaintiff was unable to lift more than five pounds under any circumstances, a later consultive examination noted the absence of muscle atrophy or other objective evidence supporting Plaintiff's claims of exertional limitations (Tr. 198, 221).

Likewise, Dr. Best's June 2004 opinion that Plaintiff was "totally disabled" contradicts his own records showing that Plaintiff received essentially conservative care for her complaints of back and neck pain as well as CTS (Tr. 112, 117, 120, 124). Although Plaintiff reported symptoms of CTS, Dr. Best noted the absence of "joint swelling, heat, or redness of the bilateral elbows, wrists or hands," as well as the absence of muscle atrophy (Tr. 126). Further, assuming Drs. Savliwala and Best genuinely believed that Plaintiff was incapable of all competitive employment, the ultimate legal conclusion as to whether a plaintiff is disabled or unable to work is reserved to the Commissioner. 20 C.F.R. §404.1527(e)(3).

### B. Mental Impairments

In contrast, the ALJ's failure to acknowledge Plaintiff's mental impairments at either Step Two of his analysis or in his hypothetical question to the VE constitutes reversible error. CFR § 416.921(a) defines a non-severe impairment which does not require inclusion at Step Two as one that does not "significantly limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* "[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." An impairment can be considered "not severe . . . only if the impairment is a 'slight

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985) (*citing to Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).

The ALJ's Step Two finding that Plaintiff's limitations as a result of depression and anxiety were non-severe is contradicted by overwhelming record evidence. First, Plaintiff's treating sources noted her limitations as a result of a mental condition, finding the presence of substantial impairments in Plaintiff's social and occupational functioning (Tr. 164-171). The ALJ premises his "non-severe" finding on the fact that consultive and non-examining sources found a lesser degree of mental limitation than the treating sources (Tr. 22). However, contrary to the ALJ's findings, all of the applicable non-treating sources found some degree of mental limitation. For instance, the ALJ cited an October 2005 mental assessment by Dr. Muhaimeen to support his conclusion that Plaintiff did experience significant mental limitations (Tr. 22). However, contrary to the administrative conclusion, Dr. Muhaimeen assigned Plaintiff a GAF of 60-65, clearly indicating the presence of as much as *moderate* social or occupational limitations (Tr. 234-235). Most obviously, although the ALJ accorded great weight to Dr. Tien's non-examining assessment to support his conclusion that Plaintiff experienced only mild mental limitations, this is based on an erroneous reading of the record (Tr. 22). Contrary to the ALJ's statement that Dr. Tien found that Plaintiff experienced only mild restrictions in "maintaining concentration, persistence or pace," the consultive physician actually concluded that Plaintiff experienced *moderate* concentrational

deficiencies (Tr. 183, 187, 188).

The omission of an impairment at Step Two where substantial evidence supports the presence of work-related limitations does not in and of itself require remand. *See Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004). *See also Moran v. Commissioner of Social Security* 2003 WL 22002432, 2 (E.D.Mich.,2003); *Leeper v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990). However, here, the failure to consider Plaintiff's mental limitations throughout the five-step analysis invalidates the ultimate conclusion that Plaintiff was not disabled. Specifically, the ALJ's failure to account for Plaintiff's mental impairments in composing a set of hypothetical limitations at the hearing (thus invalidating the VE's responses) requires a remand (Tr. 302). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)(internal citations omitted) . Because substantial evidence fails to support the ALJ's complete omission of Plaintiff's mental impairments from the hypothetical question, a remand is required.

In closing, I note that although Plaintiff requests remand for an award of benefits, the failure to consider her mental impairments, while critical, does not suggest that Plaintiff is automatically entitled to benefits. Thus, I find that pursuant to *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), this case should be remanded

for further proceedings consistent with Section **B.** of this analysis.

**CONCLUSION**

For the reasons set forth in Section **B**. of the analysis, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED in part and denied in part, DENYING her request for an award of benefits, but GRANTING her request for a remand for further fact-finding.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

objections.

                            S/R. Steven Whalen
                            R. STEVEN WHALEN
                            UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 29, 2008.

                            S/Gina Wilson
                            Judicial Assistant